## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:   JAMA E. FONTAINE,                                    No. 12-14491-j7

Debtor.

## **MEMORANDUM OPINION**

The Debtor, Jama E. Fontaine, seeks sanctions against HSBC Bank USA, National

Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through

Certificates, Series 2007-8 ("HSBC Bank-Trustee") for alleged willful violations of the

automatic stay and for alleged violations of the discharge injunction.[1]  The Court held a final,

evidentiary hearing on the Sanctions Motions, followed by closing arguments on a later date, and

took the Sanctions Motions under advisement. Debtor asserts that HSBC Bank-Trustee violated

the automatic stay by obtaining a foreclosure judgment after Debtor filed her voluntary

bankruptcy petition, and that HSBC Bank-Trustee's failure to correct the stay violation after

learning of Debtor's bankruptcy filing is a continued, willful violation  of the automatic stay

entitling the Debtor to actual and punitive damages. Debtor also contends that HSBC Bank-

Trustee's collection efforts following the termination of the automatic stay violated the discharge

injunction, entitling the Debtor to additional sanctions. HSBC Bank-Trustee asserts that the entry

of the foreclosure judgment shortly after Debtor filed her bankruptcy petition was a mere

ministerial act that did not violate the automatic stay. Alternatively, if the Court determines that

HSBC Bank-Trustee violated the automatic stay, HSBC Bank-Trustee urges the Court to apply

the doctrine of laches to bar the Debtor from recovering any damages. HSBC Bank-Trustee also

---

[1] *See* Motion to Enforce the Automatic Stay and Sanction Creditor for Willful Violation of the Automatic Stay
("Stay Violation Motion") – Docket No. 30; and Motion to Include Sanctions for Violation of the Discharge
Injunction to Conform for Appropriate Relief ("Discharge Injunction Violation Motion") – Docket No. 46 (together,
the "Sanctions Motions").

asserts that its continuing efforts to foreclose its mortgage after the Debtor received a discharge did not violate the discharge injunction.

After considering the evidence and counsel's arguments, the applicable Bankruptcy Code sections, and relevant case law, the Court finds and concludes that 1) the entry of the foreclosure judgment after the Debtor filed her voluntary petition commencing her bankruptcy case violated the automatic stay and is, therefore, void; 2) HSBC Bank-Trustee willfully violated the automatic stay; 3) laches does not bar the Debtor from recovering actual damages for willful violation of the automatic stay; 4) Debtor's actual damages are limited to the attorney's fees she incurred in pursuing the Stay Violation Motion in her bankruptcy case; 5) punitive damages for willful violation of the automatic stay are not warranted; and 6) HSBC Bank-Trustee's collection efforts after the Debtor received a discharge did not violate the discharge injunction.

## FACTS AND PROCEDURAL HISTORY

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on December 12, 2012. Debtor scheduled a residence at 616 Paper Flower Pl NE, Albuquerque, NM 87111 (the "Property") on Schedule A, with a value of $948,000, subject to a pending foreclosure suit. *See* Docket No. 1. Debtor listed "HSBC Bank USA NA" as a secured creditor on Schedule D. *Id.* On December 12, 2012, notice of the Debtor's bankruptcy filing and the date of the meeting of creditors was sent to all scheduled creditors, including HSBC Bank-Trustee.[2]

---

[2] The list of recipients submitted to the Bankruptcy Noticing Center includes the following:
    HSBC Bankruptcy Department, POB 4144 Carol Stream, IL 60197-4144
    HSBC POB 5253, Carol Stream, IL 60197
    HSBC Bank USA, NA c/o Castle Stawiarski, LLC, Attorneys, 20 First Plaza NW, Suite 602, Albuquerque, NM 87102
    Wells Fargo Bank, POB 94435, Albuquerque, NM 87199
    Wells Fargo Bank NA, Wells Fargo Servicing Ctr, MAC B6955-01B POB 31557, Billings, MT 59107-9900
*See* Docket No. 2.

Before the Debtor filed her bankruptcy petition, HSBC Bank-Trustee filed a foreclosure action against the Debtor in the Second Judicial District Court, as Case No. CV 2010 10579 (the "State Court Action") seeking to foreclose its mortgage lien against the Property. *See* Exhibit A. The prepetition Complaint for Foreclosure included a request for an *in personam* judgment against the Debtor for any deficiency following the foreclosure of the Property if the proceeds from the sale were insufficient to satisfy the debt to HSBC Bank-Trustee. *See* Exhibit 7. On November 27, 2012, at a hearing in the State Court Action, Judge Beatrice J. Brickhouse in an oral ruling granted HSBC Bank-Trustee's motion for summary judgment for foreclosure of the Property. The Debtor and Mr. Cowgill were left with the impression that they would not have to leave the Property immediately based on comments from counsel for HSBC Bank-Trustee's that the foreclosure process is slow and that it would take some time for HSBC Bank-Trustee to complete the foreclosure.

As a result of Judge Brickhouse's ruling, HSBC Bank-Trustee prepared a  Summary, Stipulated, and Default Judgment, Decree of Foreclosure, and Appointment of Special Master ("Foreclosure Judgment"), and sent it to the Debtor for review. *See* Exhibit GG (Letter dated December 4, 2012 from Castle Stawiarski, LLC to the Debtor enclosing proposed orders resulting from the November 28, 2012 hearing in the State Court Action).[3] Debtor objected to the form of the Foreclosure Judgment. *See* Exhibit C (noting Debtor's objection). HSBC Bank-Trustee submitted the Foreclosure Judgment to the state court, noting that the Debtor objected to the form of judgment, before the Debtor filed her bankruptcy petition.

---

[3] The December 4, 2012 letter stated further that the proposed "Orders will be submitted to the Court, with or without your approval, on December 12, 2012."  Exhibit GG.

The seven-page Foreclosure Judgment was entered in the State Court Action on December 13, 2012, one day after the Debtor filed her voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Foreclosure Judgment includes the following:

> Plaintiff shall have an in personam judgment against Defendant Jama Fontaine, individually, in the amount of $938,006.62, as of September 26, 2011, plus interest thereafter ta the rate of 6.375% per year, until the date of Special Master's sale, plus costs of sale, including Special Master's fee of $321.00, plus any additional attorney fees and costs actually expended from the date of this judgment until the date of the Special Master's sale, plus those additional amounts, if any, which Plaintiff will be required to pay prior to termination of this action for property taxes and insurance premiums or any other cost of upkeep of the property of any sort. The entire judgment amount, as described herein, is secured by a mortgage upon the above described property and constitutes a first lien on the property.

Foreclosure Judgment, ¶ B (Exhibit C).

As of the date the Foreclosure Judgment was entered in the State Court Action, HSBC Bank-Trustee had not received notice of the Debtor's bankruptcy filing. Debtor received a copy of the Foreclosure Judgment on December 14, 2012. On the same date, Erenio Gutierrez, Jr., Debtor's bankruptcy counsel, filed a Notice of Automatic Stay in the State Court Action. *See* Exhibit D.

On January 15, 2013, HSBC Bank-Trustee filed a Motion for Annulment of the Automatic Stay and for Abandonment (11 U.S.C. § 362 and Bankruptcy Rule 4001) (the "Stay Motion"), requesting the Court to annul the automatic stay with respect to the Debtor and the Debtor's bankruptcy estate and to enter an order abandoning the Property. *See* Docket No. 17 The Debtor, on her own behalf and not through her bankruptcy counsel, filed an objection to the Stay Motion. *See* Docket No. 19. At the preliminary hearing on the Stay Motion, held March 18, 2013, the Debtor appeared without her counsel of record and complained that she had received

the Foreclosure Judgment two days after she filed her bankruptcy petition.[4] Counsel for HSBC Bank-Trustee stated on the record that it no longer wished to pursue its request for annulment of the automatic stay, and that, because a ruling on HSBC Bank-Trustee's request for foreclosure was made before the Debtor filed her bankruptcy petition, HSBC Bank-Trustee would be satisfied with simple termination of the automatic stay. The Court explained the following on the record of the preliminary hearing: 1) to the extent the automatic stay applied it would terminate when the Debtor's bankruptcy case is closed and will be replaced by the discharge injunction; and 2) the Debtor could raise the issue of the effect of the automatic stay on the entry of the Foreclosure Judgment in state court.

The Debtor received a discharge on March 19, 2013. *See* Docket No. 22. A final decree was entered and the Debtor's bankruptcy case was closed on the same date. *See* Docket No. 23.

After the Debtor's bankruptcy case was closed, HSBC Bank-Trustee scheduled a foreclosure sale of the Property for June 7, 2013 based on the Foreclosure Judgment. *See* Exhibit 8. The foreclosure sale was postponed and rescheduled at least three times.[5] After receiving the first notice of sale, the Debtor and her partner, John Cowgill, met with attorney N. Ana Garner on May 30, 2013 for about an hour. On July 10, 2013, just prior to the foreclosure sale scheduled for July 12, 2013, Debtor's counsel, N. Ana Garner, sent an email on behalf of the Debtor to counsel for HSBC Bank-Trustee asserting that the Foreclosure Judgment was void because its entry after the date of the bankruptcy filing violated the automatic stay. *See* Exhibit 4. Ms.

---

[4] The court transmitted a copy of the audio recording of the March 18, 2013 preliminary hearing to Debtor's counsel and to counsel for HSBC Bank-Trustee on February 13, 2019 when an issue arose in connection with the Debtor's Stay Violation Motion concerning whether HSBC Bank-Trustee would pursue its request to annul the automatic stay. *See* Docket No. 71.

[5] *See* Exhibit 6 (Docket Report from the State Court Action); Exhibit 8 (Notice of Sale scheduling foreclosure sale on June 7, 2013); Exhibit 9 (Notice of Foreclosure Sale scheduling sale on October 6, 2015); Exhibit 10 (Notice of Foreclosure Sale scheduling sale on October 25, 2016).

Garner attached to the email a copy of a published bankruptcy court decision in support of her position. *Id.* In response, HSBC Bank-Trustee acting through its then counsel, agreed to postpone the foreclosure sale to allow the Debtor more time to remove her personal property from the Property and to discuss resolution of the case, but stated that he strongly disagreed with her position. *See* Exhibit 5. HSBC Bank-Trustee's counsel asserted that relevant case law establishes that ministerial acts do not violate the automatic stay, and that the entry of a judgment that had already been granted before the Debtor filed her bankruptcy petition is a ministerial act. *Id.* Debtor did not pursue her position that the Foreclosure Judgment was void because it was entered in violation of the automatic stay in the State Court Action. The Debtor and Mr. Cowgill testified that, at the time, in June of 2013, Debtor accepted counsel for HSBC Bank-Trustee's explanation that the Foreclosure Judgment did not violate the automatic stay because she knew that HSBC Bank-Trustee's counsel was an experienced bankruptcy practitioner.

For several years, Debtor and Mr. Cowgill filed motions in the State Court Action attempting to vacate the Foreclosure Judgment on grounds that HSBC Bank-Trustee lacked standing to enforce the note and mortgage. *See, e.g.,* Notice of Objection to Plaintiff Filing Report and Account of Sale by Special Master, challenging HSBC Bank-Trustee's standing – Exhibit J.

Debtor continued to receive notices from HSBC Bank-Trustee and Wells Fargo Bank, N.A. after the Debtor received a discharge. In April of 2014, Wells Fargo Bank, N.A. sent the Debtor notice concerning the renewal of hazard insurance for the Property ("Hazard Insurance Notice"). *See* Exhibit 16. The Hazard Insurance Notice states that the lender purchased the policy on behalf of the Debtor because the lender did not receive proof of acceptable insurance from the

Debtor. *Id.* Page three of the Hazard Insurance Notice, in smaller print, contains the following

language:

> Wells Fargo Bank, N.A. is required by the Fair Debt Collection Practices Act to inform you that, as your account servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge from bankruptcy, and the account was not reaffirmed in the bankruptcy case, Wells Fargo Bank, N.A. will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

To the Debtor, the notice looked like an invoice, another bill she would ultimately be required to

pay.

Over two years later, in the fall of 2015, again relying on the Foreclosure Judgment,

HSBC Bank-Trustee scheduled another foreclosure sale of the Property to take place on October

6, 2015 (the "October 2015 Sale"). *See* Exhibit 9. The evidence does not show the reason for the

delay. By that time, the reported interest accrued on the Foreclosure Judgment was $240,993.82.

*Id.* The special master filed a report of the October 2015 Sale reporting that HSBC Bank-Trustee

made the best and highest bid for the Property in the sum of $576,415.47. *See* Exhibit 11. But for

a reason not in evidence the sale was not consummated. Another year passed. HSBC Bank-

Trustee scheduled another foreclosure sale of the Property to take place on October 25, 2016 (the

"October 2016 Sale"). *See* Exhibit 10. By that time, the reported interest accrued on the

Foreclosure Judgment was $304,068.34. *Id.* The special master filed a report of the October 2016

Sale reporting that HSBC Bank-Trustee made the best and highest bid for the Property in the

sum of $509,200.76. *See* Exhibit 12.

HSBC Bank- Trustee prepared an order confirming the October 2016 Sale that included

the following provision: "No deficiency judgment shall be entered without an evidentiary

hearing, with actual service upon and notice thereof to Defendants." *See* Exhibit 14. For a reason

not in evidence that order confirming sale was never entered in the State Court Action. Two years later, on October 29, 2018, counsel for HSBC Bank-Trustee submitted to Debtor's counsel, Ms. Gardner, another proposed order confirming the October 2016 Sale. *See* Exhibit 15. The proposed order confirming sale states that the judgment is an "in rem" judgment, and expressly provides that "no deficiency judgment shall be sought." *Id.*

*The Appeal*

On January 15, 2018, the Debtor appealed an Order Denying Defendant Fontaine's Emergency Motion Under Rule 1-060B(4) to Reopen Final Judgment and All Judgments due to Plaintiff's Lack of Standing; and Postpone Future Hearings and Orders until this Motion is Heard in the Interests of Judicial Economy, entered in the State Court Action on December 14, 2017 ("State Court Order Denying Rule 60 Motion"). *See* Notice of Appeal – Exhibit L. Debtor never filed a direct appeal of the Foreclosure Judgment. The State Court Order Denying Rule 60 Motion noted that the Foreclosure Judgment had been entered more than five years earlier, that the Defendant nevertheless persisted in challenging HSBC Bank-Trustee's right to foreclose the Property, and that, "[w]hile the Court understands that this matter is obviously of great importance to the Defendant, the Court finds no valid basis to set aside a five year old Judgment." *Id.* On appeal, the Debtor continued to assert that HSBC Bank-Trustee lacked standing to foreclose the Property, but did not assert that the Foreclosure Judgment was void because it was entered in violation of the automatic stay. *See* Exhibits M and O. Debtor was not successful on appeal. *See* Exhibit P – Memorandum Opinion entered July 19, 2019, affirming the State Court Order.

*Debtor's Reactions to HSBC Bank-Trustee's Efforts to Foreclose the Property*

The Debtor, who has had a long career as a real estate broker, was very upset and shocked when she received the Foreclosure Judgment after she had filed her bankruptcy case. She felt "sick" because the Foreclosure Judgment indicated to her that she was not only responsible for $938,000 in principal, but for accruing interest. She was "devastated" when she received the notice of the sale for the Property. Because HSBC Bank-Trustee had filed a motion to annul the automatic stay, the Debtor and Mr. Cowgill thought HSBC Bank-Trustee would have to vacate the Foreclosure Judgment and obtain a new judgment after the bankruptcy case was over. Every time she received a notice from HSBC Bank-Trustee or other document filed in the State Court Action the reported interest on the debt continued to grow. *See, e.g.,* Exhibits 10, 11, 12. The Debtor testified that receiving these papers caused her to feel the stress both emotionally and physically; she did not want to get up and experienced depression and anxiety. She sought treatment through Chinese medicine, energy treatments, and massage therapy treatments. The Debtor does not have any records or bills from those treatments. The Debtor testified that eventually, the ongoing State Court Action caused her so much stress that she moved to Santa Fe and took another job with the realty company with less responsibility and lower pay. She lived in Santa Fe for five years, and resided in five different places. She currently resides in Albuquerque.

John Cowgill is the Debtor's domestic partner. He and the Debtor have lived together since 2007. Mr. Cowgill assisted the Debtor with her defense of the State Court Action and was added as a defendant to the State Court Action. Mr. Cowgill is not an attorney. After doing some research on his own, he determined that he could purchase some, but not all, of the rights in the Property, so he purported to buy the right of possession, right of enjoyment, and right of

-9-

exclusion, without obtaining title to the Property. He views those rights as common law rights to the Property that grant him an encumbrance on the title. He also assisted the Debtor in recording several documents in the records of the Bernalillo County Clerk purporting to create security interests in the Property. Eventually the state court entered an order prohibiting Mr. Cowgill from filing any more documents in the State Court Action on behalf of the Debtor. *See* Exhibit 1. He was permitted to file documents in the State court Action on his own behalf.

*Reopening Debtor's Bankruptcy Case*

On August 1, 2018, more than five years after the Debtor's bankruptcy case was closed, just shortly after the New Mexico Court of Appeals affirmed the State Court Order Denying Rule 60 Motion, Debtor sought to reopen her bankruptcy case to seek remedies for HSBC Bank-Trustee's alleged violation of the automatic stay. *See* Docket No. 27. The Debtor testified that she did not become aware of a potential problem with entry of the Foreclosure Judgment violating the automatic stay until she contacted a mortgage company in the spring or early summer of 2018 as part of her efforts to redeem the Property. This Court reopened the Debtor's bankruptcy case on August 8, 2018. *See* Docket No. 28. The Debtor filed a motion to enforce the automatic stay and for sanctions for willful violation of the automatic stay on August 21, 2018. *See* Docket No. 30. The Debtor also sought to reinstate the automatic stay, which the Court denied. *See* Docket No. 41 and Docket No. 43. The Court permitted the Debtor to include in her motion a request for sanctions for violation of the discharge injunction. *See* Docket No. 56. From 2013, when the Debtor first consulted with Ms. Garner upon receipt of the first notice of sale of the Property, through the trial of this contested matter, the Debtor has incurred attorney's fees totaling $22,596.20. *See* Exhibit 19.[6]

---

[6] Ms. Garner charged the Debtor a flat fee of $10,000 for legal services provided in connection with the Debtor's bankruptcy case. *Id.*

HSBC Bank-Trustee never sought to vacate the Foreclosure Judgment in the State Court Action, and never obtained a new judgment for foreclosure after the Debtor received her discharge and the automatic stay terminated by operation of law upon the closing of the bankruptcy case. HSBC Bank-Trustee continued to rely on the Foreclosure Judgment, and its belief that its entry was a ministerial act that did not violate the discharge injunction, to schedule the foreclosure sale of the Property. To date HSBC Bank-Trustee has not taken possession of the Property. HSBC Bank-Trustee has not taken any efforts to collect a deficiency judgment from the Debtor.

DISCUSSION

A. The Automatic Stay

Upon the filing of a voluntary petition for relief that commences a bankruptcy case, with limited exceptions, the stay arises automatically to stop all actions against the debtor and against property of the bankruptcy estate. *See* 11 U.S.C. § 362(a)(1) and (3) ("[A] petition . . . operates as a stay . . . of the commencement or continuation . . . of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the case under this title" and stays "any act to obtain possession of property of the estate").[7] The purpose of the automatic stay is "to protect the debtor from collection efforts and to protect creditors from inequitable treatment." *In re Peeples*, 880 F.3d 1207, 1216 (10th Cir. 2018) (citation omitted).[8]

---

[7] *See also Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1330 (10th Cir. 1984) (The automatic stay "'stops all collection efforts, all harassment, and all foreclosure actions.'") (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5840–41); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 527 (2d Cir. 1994) ("The stay is effective immediately upon the filing of the petition.") (citations omitted); *In re Trujillo*, 485 B.R. 238, 245 (Bankr. D. Colo. 2012) ("The automatic stay operates as its name states—'automatically'—to enjoin further collection actions for as long as the automatic stay remains in effect.").

[8] *See also Escobedo v. Perales-Pina (In re Escobedo)*, 513 B.R. 605, 611 (Bankr. D.N.M. 2014) ("The purpose of the automatic stay is two-fold: 'The stay protects debtors from harassment and also ensures that the debtor's assets can be distributed in an orderly fashion, thus preserving the interests of the creditors as a group.'") (quoting *Johnson v. Smith (In re Johnson)*, 575 F.3d 1079, 1083 (10th Cir. 2003)).

Unless the Court modifies the stay, it remains in effect as to acts against property of the estate until such property is no longer property of the estate, and remains in effect as to acts against the Debtor until the discharge is granted or denied or the debtor's bankruptcy case is dismissed or closed. 11 U.S.C. § 362(c)(2). Unless the court orders otherwise, all property of the estate that was scheduled under §521(a)(1) is abandoned from the estate, and therefor is no longer property of the estate, when the bankruptcy case is closed. 11 U.S.C. § 544(c).

      1.   The Foreclosure Judgment Is Void

Any action taken in violation of the automatic stay is void. *Ellis v. Consol. Diesel Elec. Corp.,* 894 F.2d 371, 372 (10th Cir. 1990) ("It is well established that any action taken in violation of the stay is void and without effect.") (citations omitted). This is so even if the creditor took the action without actual knowledge of the automatic stay. *In re Calder,* 907 F.2d 953, 956 (10th Cir. 1990) ("Ordinarily, any action taken in violation of the stay is void and without effect . . . even where there is no actual notice of the existence of the stay.") (citations omitted); *In re C.W. Mining Co.*, 477 B.R. 176, 192 (B.A.P. 10th Cir. 2012), *aff'd*, 749 F.3d 895 (10th Cir. 2014) ("The effect of violating the automatic stay is to void the action, whatever the context.") (citation omitted). However, the Court has authority to "annul" the automatic stay under § 362(d) for cause. "Annulment is retroactive relief, allowing the Court to validate actions taken in violation of the stay that would otherwise be void." *Franco v. Franco (In re Franco)*, 574 B.R. 730, 738 (Bankr. D.N.M. 2017) (citing *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 977 (1st Cir. 1997) (remaining citations omitted); *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984) ("The word 'annulling' in this provision [§ 362(d)] . . . contemplates the power of bankruptcy courts to grant relief from the stay which has retroactive effect").

Here, the Foreclosure Judgment was entered one day after the Debtor filed her Chapter 7 petition at a time when HSBC Bank-Trustee did not have actual knowledge of the bankruptcy filing or of the automatic stay. No order has been entered annulling the automatic stay. Nevertheless, consistent with established Tenth Circuit precedent, if entry of the Foreclosure Judgment violated the automatic stay, the Foreclosure Judgment is void and without effect.

Despite the post-petition timing of the entry of the Foreclosure Judgment, HSBC Bank-Trustee asserts that the entry of the Foreclosure Judgment in the State Court Action did not violate the automatic stay because it was a 'ministerial act' that merely confirmed the state court's pre-bankruptcy ruling in the State Court Action granting HSBC Bank-Trustee's motion for summary judgment.

If entry of a judgment is a ministerial act by the court clerk it does not constitute the continuation of a judicial proceeding that violates the automatic stay. *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 527 (2d Cir. 1994). A ministerial act outside the purview of the automatic stay is one that is essentially clerical in nature. *Soares*, 107 F.3d at 974. The *Soares* Court explained: "[W]hen an official's duty is delineated by, say, a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment, the resultant act is ministerial." *Id*. (citations omitted). *See also In re Braught*, 307 B.R. 399, 402 (Bankr. S.D.N.Y. 2004) ("Generally, if the only remaining barrier to enforceability of a judgment is entry by the court clerk, the performance of this ministerial act will not violate the stay.") (citation omitted)*; In re Capgro Leasing Assocs.,* 169 B.R. 305, 315 (Bankr. E.D.N.Y. 1994) ("[E]ntry of a judgment will constitute a 'ministerial act' where the judicial function has been completed and the clerk has merely to perform the function of entering the judgment upon the court's docket.") (citations omitted).

On the other hand, an act requiring the exercise of judicial deliberation, discretion or judgment is not a ministerial act that is outside the purview of the automatic stay. *In re Pettit*, 217 F.3d 1072, 1080 (9th Cir. 2000) ("Ministerial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement do not constitute continuations of such a proceeding."); *Soares*, 107 F.3d at 974 ("[Ministerial] acts can usefully be visualized as the antithesis of judicial acts, inasmuch as the essence of a judicial act is the exercise of discretion or judgment.") (citation omitted).

The judicial function requiring judicial deliberation, discretion or judgment is not complete until the judge signs the judgment or approves it for entry, or the clerk is required to enter the judgment without any further action or direction from the judge. A judge signing a judgment following an oral ruling is not a ministerial act if the signature is needed before the clerk will enter the judgment. As one court explained:

> Until the final judgment was signed and delivered to the court administrator, the trial court judge retained the discretion to alter his oral ruling in any way he saw fit. Signing of the judgment was not, therefore, a ministerial act and was not excepted from the application of the automatic stay.

*In re Kiraz*, No. 11-35743-TMB7, 2012 WL 1120379, at *2 (Bankr. D. Or. Apr. 3, 2012). *See also GemCap Lending I, LLC v. Bateman (In re Naturescape Holding Grp. In'l, Inc.)*, No. 16-00982, 2018 WL 5099706, at *14 n.85 (Bankr. D. Haw. Oct. 2, 2018) ("The entry of a written order by a judge after an oral ruling does not meet this [ministerial act] standard because, at a minimum, it entails some 'judicial involvement.' This is particularly so because a judge is always free to enter a written order that varies from the oral ruling.") (citation omitted); *In re Horned Dorset Primavera, Inc.,* No. 15-03837 (ESL), 2018 WL 3629952, at *13 (Bankr. D.P.R. July 27, 2018) (although the clerk's entry of a signed judgment may be a ministerial act, the court's ordering entry of a judgment involves a judicial function that is not ministerial act);

-14-

*Braught*, 307 B.R. at 401 ("[W]hen the judge affixed his signature to the judgment on May 22, 2003, a full month after Debtors' bankruptcy filing, he performed a judicial function which was a violation of the automatic stay.").

HSBC Bank-Trustee points out that the judge in the State Court Action made an oral ruling granting summary judgment for foreclosure before the Debtor filed her bankruptcy petition. The HSBC Bank-Trustee relies on *In re Papatones*, 143 F.3d 623 (1st Cir. 1998). In *Papatones,* the First Circuit concluded that the "mere ministerial notation of the judgment on the docket" following the court's pre-petition "oral direction for entry of judgment" did not violate the automatic stay. *Papatones*, 143 F.3d at 625. "Therefore, even though the oral direction for entry of judgment was not reduced to writing until the next day, neither that clerical act nor the mere ministerial notation of the judgment on the docket contravened the automatic stay.*" Id.*

On the surface, the facts of this case are similar to *Papatones*. On closer inspection, however, *Papatones* is distinguishable. In *Papatones*, the Court pointed out that under Rule 58 of the Maine Civil Rules, which was applicable to the Maine state court judgment at issue, the clerk of court was required to enter the money judgment without any further direction or action by the judge. *Id.* at 625 n. 4. By contrast, the Foreclosure Judgment granted in favor of the HSBC Bank-Trustee could not be entered until the State Court judge signed the judgment.

The Foreclosure Judgment, though submitted prepetition based on the pre-petition oral grant of summary judgment on the record, required the state court judge to exercise judicial discretion prior to its entry. The Foreclosure Judgment notes that the Debtor objected to the form of the proposed Foreclosure Judgment. *See* Exhibit 2 (Debtor's signature block reflects that she "objected" to the form of the judgment). The state court judge therefore had to determine whether it was appropriate to enter the Foreclosure Judgment notwithstanding the Debtor's

-15-

refusal to approve it. The judge had to review the Foreclosure Judgment to make sure it was consistent with her oral ruling and to determine whether any provisions in the judgment not expressly included in the oral ruling were appropriate. There is no evidence that the seven-page Foreclosure Judgment containing detailed provisions governing the foreclosure merely reduced the state court judge's oral ruling granting summary judgment to writing verbatim. Further, the judge had discretion to revise her ruling before signing or approving the Foreclosure Judgment. There is no evidence that the judge signed or approved the Foreclosure Judgment for entry prior to commencement of the bankruptcy case. Under these circumstances, the entry of the Foreclosure Judgment did not constitute a mere ministerial act. The entry of the Foreclosure Judgment violated the automatic stay. It is void ab initio. *See Braught*, 307 B.R. at 404 ("Judicial actions taken against a debtor [in violation of the automatic stay] are void *ab initio*") (citation omitted).

### 2. HSBC Bank-Trustee Willfully Violated the Automatic Stay

Under 11 U.S.C. § 362(k)(1), an individual debtor is entitled to recover damages for injuries caused by a creditor's willful violation of the automatic stay, and, in appropriate circumstances may also recover punitive damages. 11 U.S.C. § 362(k)(1).[9] The debtor bears the burden of proving a willful stay violation by a preponderance of the evidence. *Johnson v. Smith (In re Johnson),* 501 F.3d 1163, 1171 (10th Cir. 2007). For a stay violation to be considered "willful" the creditor must know that the automatic stay was in place and intend to take the actions that violated the automatic stay; specific intent to violate the automatic stay is not

---

[9] That section provides, in relevant part:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1).

required. *Id.*[10]  The requisite willfulness also exists when the creditor knows or should have known that the debtor filed a bankruptcy case that would give rise to the automatic stay, and knows or should have known that the bankruptcy court was available to determine the applicability of the automatic stay but nevertheless intentionally takes the action that violates the automatic stay. *See In re Diviney*, 225 B.R. 762, 776 (B.A.P. 10th Cir. 1998) (finding a willful stay violation where the sophisticated creditor "knew or should have known that reinstatement of a Chapter 13 case reinstates the automatic stay . . . . and knew or should have known that the bankruptcy court was available to decide whether the stay applied and the [creditor] had to return the Car [to the debtor].").

Even if a creditor violates the automatic stay without knowledge of the automatic stay, the violation nevertheless "becomes willful, if the creditor fails to remedy the violation after receiving notice of the stay." *In re Gagliardi*, 290 B.R. 808, 819 (Bankr. D. Colo. 2003) (citing *Diviney,* 225 B.R. at 776 (remaining citations omitted));  *Kline v. Tiedemann (In re Kline)*, 424 B.R. 516, 524 (Bankr. D.N.M. 2010) ("It is well established that even a technical stay violation (one committed without knowledge of the stay) can become willful for purposes of §362(h) [now §362(k)] if the creditor fails to remedy the situation after receiving notice of the automatic stay.") (citations omitted). Ordinarily, once the Court determines that the stay violation was willful, damages for the consequent injury to the Debtor become mandatory. *Gagliardi,* 290 B.R. at 819 ("Once a court finds a violation of the stay to be willful, Section 362[k] makes the award of damages for injuries mandatory.") (citations omitted); *In re Baetz*, 493 B.R. 228, 234 (Bankr. D.

---

[10] *See also Kline v. Deutsche Bank Nat'l Trust Co. (In re Kline)*, 420 B.R. 541, 547 (Bankr. D.N.M. 2009) ("A 'willful violation' does not require a specific intent to violate the automatic stay but only that the defendant has knowledge of the bankruptcy case and that the defendant's actions which violated the stay were intentional.") (citations omitted); *Achterberg v. Creditors Trade Ass'n, Inc. (In re Achterberg)*, 573 B.R. 819, 831 (Bankr. E.D. Cal. 2017) ("Once the creditor learns or has notice of a bankruptcy case having been filed, any actions that it intentionally undertakes are deemed willful.") (citation omitted).

Colo. 2013) ("Once a court finds a violation of the stay to be willful, §362(k) ordinarily makes the award of damages for injuries mandatory.") (citaitons omitted).

HSBC Bank-Trustee willfully violated the automatic stay by failing to remedy the void Foreclosure Judgment once it learned of the Debtor's bankruptcy filing. It never sought or obtained an order from this Court either determining that the automatic stay did not apply to the Foreclosure Judgment or annulling the automatic stay. It never obtained a new foreclosure judgment after the automatic stay terminated upon the grant of a discharge to the Debtor and the closing of the bankruptcy case. Even though such actions do not evince a specific intent to violate the automatic stay, HSBC Bank-Trustee nevertheless willfully violated the automatic stay by continuing to rely on the Foreclosure Judgment after it knew the Debtor had commenced a bankruptcy case.

> 3. Laches Does Not Bar the Debtor from Recovering Damages for Willful Violation of the Automatic Stay

"[E]quitable principals may relieve a court from what is otherwise a mandatory obligation to impose sanctions for stay violations." *Baetz*, 493 B.R. at 238. HSBC Bank-Trustee contends that the Debtor is barred from pursuing her claim for willful violation of the automatic stay by the doctrine of laches. Laches is an "equitable doctrine  by which a court denies relief to a claimant who has unreasonably delayed in asserting the claim, when that delay has prejudiced the party against whom relief is sought." Black's Law Dictionary 1006 (10th ed. 2014). Laches can serve as a complete defense to a debtor's claim for damages for willful violation of the automatic stay under 11 U.S.C. § 362(k). *See Richardson v. Trustees of Ind. Univ. (In re Richardson*, 497 B.R. 546, 556-58 (Bankr. S.D. Ind. 2013) (acknowledging that laches can bar a debtor's claims for willful violation of the automatic stay, but concluding that the defendant did not satisfy the requirements for laches; instead, judicial estoppel barred the debtor's claims).

-18-

Laches has two required elements: "'(1) inexcusable delay in instituting a suit; and (2) resulting prejudice to defendant from such delay.'" *In re Centric Corp.*, 901 F.2d 1514, 1519 (10th Cir. 1990) (quoting *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 523 (10th Cir. 1987)). *See also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 949 (10th Cir. 2002) ("'[T]o prove the affirmative defense of laches, the defendant must demonstrate that there has been an unreasonable delay in asserting the claim and that the defendant was materially prejudiced by that delay.'") (quoting *Hutchinson v. Pfeil,* 105 F.3d 562, 664 (10th Cir. 1997))*.* In addition, because laches is an equitable defense, the party asserting laches as a defense may not itself have "unclean hands." *See Precision Instrument Mfg. Co. v. Automotive Maint, Mach. Co.*, 324 U.S. 806, 814 (1945) (unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 825 (7th Cir. 1999) ("A party's unclean hands may stand as an obstacle to the application of the doctrine of laches in certain circumstances."); *Richardson*, 497 B.R. at 557 ("The notion of unclean hands working as a bar to the application of laches stems from the belief that an equitable defense, such as laches, cannot be used to reward a party's inequities or to defeat justice.") (citation omitted). The facts present in this case do not justify the application of laches to bar Debtor's claim for willful violation of the automatic stay.

"'Generally speaking, the relevant delay is the period from when the plaintiff knew (or should have known) of the allegedly infringing conduct [or claim], until the initiation of the lawsuit in which the defendant seeks to counterpoise the laches defense.'" *Jacobsen*, 287 F.3d at (quoting *Danjaq LLC v. Sony Corp.,* 263 F.3d 942, 952 (9th Cir. 2001)). Debtor waited over five years before pursuing her claim for willful violation of the automatic stay. The Debtor knew that

there was a legal basis to assert that the entry of the Foreclosure Judgment violated the automatic stay as early as 2013. She complained to the Court at the preliminary stay hearing that she received the Foreclosure Judgment two days after she filed her bankruptcy. The Debtor's possible misunderstanding of the law, or acceptance of HSBC Bank-Trustee's explanation that the entry of the Foreclosure Judgment was merely ministerial act that did not violate the automatic stay, is no excuse for failing to assert her claims for willful violation of the automatic stay until after she lost her appeal.

At the very least, the Debtor knew by June of 2013 that some case law supported her position that the Foreclosure Judgment violated the automatic stay and was void. Debtor's counsel asserted that position to HSBC Bank-Trustee's counsel and provided case law to support it. *See* Exhibit 4. Nevertheless, the Debtor chose not to pursue her argument that the Foreclosure Judgment violated the automatic stay until after the Debtor exhausted her efforts to overturn the Foreclosure Judgment on appeal based on HSBC Bank-Trustee's alleged lack of standing. The Court finds that the Debtor's explanation that she did not understand there was a potential problem with the Foreclosure Judgment until spring of 2018 when she was attempting to obtain a loan to redeem the Property not credible.

However, even though Debtor's delay in asserting her claims was inexcusable, HSBC Bank-Trustee has failed to demonstrate material prejudice resulting from the delay. HSBC Bank-Trustee itself is to blame for much of the harm. *Cf. Richardson*, 497 B.R. at 556-57 (finding that defendant, by deciding to rest on its judgment and insisting on its validity rather than vacating the judgment and resuming its action against the debtor after the conclusion of the debtor's Chapter 7 case, had only itself to blame for any prejudice). Like the creditor in *Richardson*, HSBC Bank-Trustee continued to rely on the Foreclosure Judgment in scheduling the foreclosure

sales for the Property, assuming the risk that its "ministerial act" argument might not carry the day. By abandoning its request to annul the automatic stay, HSBC Bank-Trustee never obtained a ruling that the Foreclosure Judgment was valid. It easily could have (and should have) sought a comfort order from this Court determining whether the stay applied to the Foreclosure Judgment. *See* 11 U.S.C. § 362(j) ("On request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated."). Failing an order from this Court determining that the automatic stay did not apply to the entry of the Foreclosure Judgment, HSBC Bank-Trustee should have obtained a new Foreclosure Judgment in the State Court Action after the Debtor received a discharge.

HSBC Bank-Trustee's only argument that the Debtor's delay caused it prejudice is that HSBC Bank-Trustee was forced to pay advanced property taxes and purchase homeowner's insurance. It is unclear form the evidence why HSBC Bank-Trustee conducted and rescheduled the foreclosure sale several times over a period of many years. That delay appears unrelated to the Debtor's delay in seeking damages for a willful violation of the stay. Further, there is nothing in the record to explain why HSBC Bank-Trustee took no action to foreclose the Property during the state court appeal. There is no evidence of a stay pending appeal. HSBC Bank-Trustee would have had to defend the appeal regardless of whether the Debtor had asserted that the Foreclosure Judgment was void in the State Court Action.[11]  HSBC Bank-Trustee has failed to demonstrate that it was prejudiced by Debtor's delay in asserting her claim for willful violation of the

---

[11] *See Chao v. Hosp. Staffing Servs., Inc.,* 270 F.3d 374, 384 (6th Cir. 2001) (non-bankruptcy court can determine whether the automatic stay applies to the proceeding before the non-bankruptcy court); *In re Benalcazar*, 283 B.R. 514, 525-26 (Bankr. N.D. Ill. 2002) ("[S]tate court judgments entered in violation of an automatic stay are void ab initio and subject to collateral attack, even if the state court has (erroneously) determined that the automatic stay does not apply to the proceeding in which the order is entered."). *Cf. Broadcast Music, Inc. v. Game Operators, Corp.*, 107 B.R. 326, 327 (D. Kan. 1989) ("[T]he applicability of the automatic stay is an issue of law within the competence of the district court or the court of appeals.") (citing *N.L.R.B. v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 938 (6th Cir. 1986) (remaining citation omitted)).

automatic stay. To the contrary, HSBC Bank-Trustee is largely responsible for any prejudice it suffered by risking the validity of the Foreclosure Judgment and delaying its efforts to foreclose the Property.

> 4. Debtor is Entitled to Recover Actual Damages for Willful Violation of the Automatic Stay

>> a. *Attorney's Fees*

Attorneys' fees resulting from a creditor's willful violation of the automatic stay are recoverable as actual damages. *See* 11 U.S.C. § 362(k) (providing that the debtor "shall recover actual damages, including costs and attorney's fees"); *Gagliardi,* 290 B.R. at 820 ("Congress considered fees as an example of actual damages by itself."). Debtor provided evidence of the attorney's fees she incurred as a result of HSBC Bank-Trustee's willful violation of the automatic stay. *See* Exhibit 19. The billing statements show that Debtor's counsel charged the Debtor $1,650 for consultation services in June of 2013; $1,000 for services in June of 2017; $5,446.20 for services in connection with the appeal; $3,500 for services in October of 2017; $1,000 for services in connection with the bankruptcy case in September of 2018; and $10,000 as a flat fee through trial of the Stay Violation Motion and the Discharge Injunction Violation Motion. *Id.* Of these amounts, the Court concludes that a total of $12,650 is recoverable as compensatory damages for HSBC Bank-Trustee's willful stay violation.

The fees incurred in prosecuting the Debtor's appeal are not compensable as damages for willful violation of the automatic stay. Debtor's arguments on appeal were limited to standing. She would have made those arguments and incurred those expenses regardless of whether HSBC Bank-Trustee had obtained a new post-petition foreclosure judgment and the Debtor had appealed that judgment on standing grounds. The description for the fees incurred in June of 2017 and October of 2017 are insufficient for the Court to determine what they were for and

whether they were necessitated by the stay violation. Debtor did not reopen her bankruptcy case until August of 2018.

The fees incurred in June of 2013 appear to relate to the email communications with HSBC Trustee's then counsel regarding the applicability of the automatic stay. Those fees and the fees incurred after the Debtor returned to this Court are traceable to the stay violation and are, therefore, recoverable as actual damages.

      b. *Emotional Distress*

Debtor also claims emotional distress damages. It is possible to recover actual damages for emotional distress resulting from a willful stay violation. *See Velasquez v. Los Alamos Nat'l Bank (In re Velasquez)*, No. 12-10670-ta7, 2015 WL 2215455, at *7 (Bankr. D. N.M. May11, 2015) ("Several circuit courts have held that emotional distress damages are actual damages within the meaning of § 362(k)) (citing *Snowden v. Check into Cash of Washington, Inc. (In re Snowden)*, 769 F.3d 651, 656-57 (9th Cir. 2014), *Lodge v. Kondaur Capital Corp.,*750 F.3d 1263, 1271 (11th Cir. 2014) and *Fleet Mortg. Group, Inc. v. Kaneb,* 196 F.3d 265, 269 (1st Cir. 1999)). However, to sustain an award for actual damages caused by emotional distress, a debtor must, at a minimum, give "specific information" rather than rely on "generalized assertions." *In re Repine*, 536 F.3d 512, 521-22 (5th Cir. 2008); *Velasquez,* 2015 WL 2215455 at *8 (same). "Fleeting and unsubstantiated emotional distress is not compensable." *Gagliardi*, 290 B.R. at 819. In the Seventh Circuit, emotional distress damages under § 362(k) are not compensable unless the debtor links the emotional injury to some other financial injury. *Aiello v. Providian Fin. Corp.* 239 F.3d 876, 879-80 (7th Cir. 2001) (observing that the protection afforded by the automatic stay "is financial in character; it is not protection of peace of mind" and stating that

"we do not think that emotional injury is compensable under section 362(h) [now 362(k)] when there is no financial loss to hitch it to").

The Debtor testified that she was "devastated" upon receiving the Foreclosure Judgment and suffered continued emotional distress, depression, and anxiety each time she received notices from HSBC Bank-Trustee because she thought that she would be held responsible for the accruing interest on the original debt. Even though the Debtor indicated she sought herbal treatment, and massage to alleviate her stress, Debtor did not provide any evidence to quantify her damages. The Debtor's generalized complaints of "devastation" and feeling depressed are insufficient to sustain an award of actual damages for emotional distress. Further, the Debtor had counsel. Had she consulted her lawyer, she could have been reassured that the discharge insulates her from any personal liability on the debt. There is no doubt that the Debtor experienced a great deal of stress facing the foreclosure her home. But that stress existed regardless of the intervening bankruptcy and HSBC Bank-Trustee's willful violation of the automatic stay.

### 5. Punitive Damages are Not Warranted Under the Circumstances

A debtor may also recover punitive damages based on a creditor's willful stay violation "in appropriate circumstances." 11 U.S.C. § 362(k)(1). Whether to award punitive damages against a creditor for willfully violating the automatic stay falls within the Court's sound discretion. *See In re Scroggin*, 364 B.R. 772, 778 (B.A.P. 10th Cir. 2007) (reviewing bankruptcy court's award of punitive damages for willful violation of the automatic stay under an abuse of discretion standard). Punitive damages may be warranted "when the defendant acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so." *Diviney*, 225 B.R. at 776 (citations omitted). Other factors the Court may

-24-

consider when determining whether to award punitive damages include "the nature of the creditor's conduct; the creditor's ability to pay the damages; the level of sophistication of the creditor; the creditor's motives; and any provocation by the debtor." *Gagliardi*, 290 B.R. at 820 (citations omitted).

Some of these factors weigh against HSBC Bank-Trustee. HSBC Bank-Trustee is a sophisticated creditor familiar with bankruptcy and the broad reach of the automatic stay. It persisted in relying on the Foreclosure Judgment to schedule foreclosure sales of the Property even though it knew or should have known there was a risk that its Foreclosure Judgment may be declared void and without effect. Even so, HSBC Bank-Trustee had some case law to support its position that the post-petition entry of the Foreclosure Judgment following the pre-petition grant of summary judgment constituted a ministerial act not subject to the automatic stay. There is no binding Tenth Circuit case law or case law within the District of New Mexico to the contrary. HSBC Bank-Trustee's conduct falls short of acting with such reckless disregard of the law that punitive damages are warranted. In addition, at the time the Foreclosure Judgment was submitted to the judge in the State Court Action, HSBC Bank-Trustee had no notice that the Debtor had filed a bankruptcy case. HSBC Bank-Trustee did not act with specific intent to violate the automatic stay. The Debtor, on the other hand, knew that the state court had granted HSBC Bank-Trustee's motion for summary judgment. She refused to approve the form of the Foreclosure Judgment and, instead filed her Chapter 7 bankruptcy case. She then waited many years to assert a claim for willful violation of the stay. Under these circumstances, the Court declines to grant the Debtor punitive damages.

B. The Discharge Injunction

The automatic stay terminates upon entry of the discharge and is replaced with the discharge injunction, which stops creditors from collecting debts that were discharged through the debtor's bankruptcy. *See* 11 U.S.C. § 362(c)(2); 11 U.S.C. § 524; *Ridley v. M & T Bank (In re Ridley)*, 572 B.R. 352, 360 (Bankr. E.D. Okla. 2017) ("Once the discharge is entered, the automatic stay dissolves and the discharge injunction arises to prevent creditors from attempting to collect debts that were discharged"). Under 11 U.S.C. § 524(a)(2), a discharge:

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a *personal liability* of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2) (emphasis added).

The discharge injunction does not, however, prevent a creditor from collecting against the collateral that secures its debt. *See Johnson v. Home State Bank,* 501 U.S. 78, 84 (1991) ("a bankruptcy discharge extinguishe[s] only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*"); *Paul v. Inglehart (In re Paul)*, 534 F.3d 1303, 1309 n.6 (10th Cir. 2008) ("The discharge injunction prohibits efforts to collect a debt 'as a *personal liability* of the debtor,' 11 U.S.C. § 524(a)(2) (emphasis added), and thus *in rem* rights are not affected.") (quoting 3 Norton Bankruptcy Law & Practice 3d § 58:4). Thus, a creditor may obtain *in rem* relief without violating the discharge injunction. *Chandler Bank of Lyons v. Ray*, 804 F.2d 577, 579 (10th Cir. 1986) (per curiam) (the discharge injunction "does not preclude *in rem* actions by secured creditors."). A creditor's actions violate the discharge injunction if 1) the creditor had notice of the discharge; 2) intended the actions that violated the discharge injunction; and 3) "acts in a way that improperly coerces or

-26-

harasses the debtor." *Hambrick v. Perceptual Dev. Corp. (In re Hambrick)*, 481 B.R. 105, 113 (Bankr. E.D. Okla. 2012) (citing *Ammons v. Eddy Fed. Credit Union (In re Ammons),* No. 7-08-11290 SR, 2012 WL 1252621 (Bankr. D.N.M. Apr. 13, 2012) (remaining citation omitted)).

None of HSBC Bank-Trustee's actions taken after the entry of the Debtor's discharge violated the discharge injunction. The Foreclosure Judgment, which included *in personam* damages against the debtor personally, was entered *before* the Debtor received a discharge. Its entry did not violate the discharge injunction, which arises only after the debtor receives a discharge. After the Debtor received a discharge, HSBC Bank-Trustee never took any action to collect against the Debtor personally. HSBC Bank-Trustee continued to schedule foreclosure sales in its efforts to foreclose the Property, but never sent any communication to the Debtor attempting to collect from the Debtor personally. "[A]n in rem foreclosure proceeding against mortgaged property that does not seek a judgment against a debtor personally after his or her debts have been discharged in bankruptcy does not violate the discharge injunction." *In re Sharak*, 571 B.R. 13, 20 (Bankr. N.D.N.Y. 2017) (citations omitted).

The proposed Order Confirming Foreclosure Sale stated that "[n]o deficiency judgment shall be entered without an evidentiary hearing." Exhibit 14. Although that language suggests that HSBC Bank-Trustee could later seek to obtain a deficiency judgment, that order was never entered in the State Court Action. The proposed Order Confirming Sale submitted to Debtor's counsel on October 29, 2018 expressly provided that no deficiency judgment will be sought. *See* Exhibit 15. The post-discharge notices sent to the Debtor informing the Debtor that renewal hazard insurance had been purchased on the Property were informational and did not demand payment. *See Best v. Nationstar Mortg. LLC (In re Best)*, 540 B.R. 1, 11 (B.A.P. 1st Cir. 2015)

-27-

("Statements of an informational nature, even if they include a payoff amount, are generally not actionable if they do not demand payment.") (citation omitted). In addition, the notices included an explanation, albeit in fine print, that the creditor "will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally." Exhibit 16 and Exhibit 17. These notices fall short of coercing the Debtor to pay a debt and did not violate the discharge injunction.

## CONCLUSION

Based on the foregoing, the Debtor's motion for damages for willful violation of the automatic stay will be granted, in part. HSBC Bank-Trustee willfully violated the automatic stay, and its Foreclosure Judgment, entered after the Debtor filed her bankruptcy petition, is void. HSBC Bank-Trustee must obtain a new judgment for foreclosure in the State Court Action before it may continue to foreclose its interest in the Property. Debtor is entitled to recover attorney's fees incurred in pursuing her Stay Violation Motion as actual damages for HSBC Bank-Trustee's willful stay violation. Debtor's motion for contempt for violation of the discharge injunction will be denied.

The Court entered the findings of fact and conclusions of law in this Memorandum Opinion in accordance with Fed. R. Bankr. P 9014 and 7052. The Court will enter separate orders consistent with this Memorandum Opinion.

_Robert H. Jacobvitz_
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: May 14, 2019

-28-

COPY TO:

N Ana Garner
Attorney for Debtor
Garner Law Office
1000 Cordova Place, #644
Santa Fe, NM 87505

Eric Allan Sutton
Attorney for Creditor
McCarthy & Holthus LLP
6501 Eagle Rock NE, Suite A-3
Albuquerque, NM 87113